UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

HARTFORD FIRE INSURANCE COMPANY
a/s/o Colonie Youth Center,

         Plaintiff,

  v.            1:07-cv-1188 (LEK/DRH)

HENRY COMPANY,

         Defendant.

## DECISION and ORDER

Plaintiff Hartford Fire Insurance Company ("HFIC") commenced the instant subrogation action against Defendant Henry Company ("Henry") seeking to recover monies HFIC paid to its insured, Colonie Youth Center ("CYC"), in connection with the delamation of Defendant's product, Air-Bloc 31, during the construction of the CYC. Presently before the Court is Defendant's Motion for summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of the Amended Complaint. Dkt. No. 29.

**I. FACTS**

CYC contracted with Turner Construction Co., a general contractor, to construct a recreation center. The project architect specified that Henry's product, Air-Bloc 31, be applied to the exterior surface of the building's walls. Turner subcontracted Cornerstone Waterproofing to apply the Air-Bloc 31. Cornerstone had prior experience applying Air-Bloc 31.

The application of the Air-Bloc 31 commenced on May 4, 2006. It was first applied to the

east elevation of the building. On May 5, 2006, there was a small amount of precipitation.[1] The application of the product continued on May 8, 9, 10 and 11th to the East, South and West walls of the building. On May 12, 2006, there was about 2.16 inches of rain. Additional Air-Bloc 31 was applied to the West wall on May 30, 2006. The parties dispute whether this last application of Air-Bloc 31 was applied while it was raining. Throughout the period during which the Air-Bloc 31 was applied, the relative humidity exceeded 50%. In late May and early June 2006, there was additional rain. During this rain, the Air-Bloc 31 was exposed and unprotected.

During the process of applying the Air-Bloc 31, the roof of the building was incomplete, thereby permitting rain to flow down the inside of the cinder block walls. Defendant claims that this condition permitted the water to migrate "from the back side through the concrete block to the exterior surface on which the product was applied, where it interrupted and reversed the curing process of Air-Bloc 31." Pl.'s Stmnt. of Mat. Facts at ¶ 15.

On June 1, 2006, delamination of the Air-Bloc 31 was observed. Henry paid $30,000 cash to Cornerstone and provided $9,000 in material credits to compensate Cornerstone for the cost of removing the Air-Bloc 31. The Air-Bloc 31 was removed by July 14, 2006. Defendant paid for all remediation except for the purchase and application of the new Air-Bloc 07 product.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322

---

[1] The weather reports submitted by Plaintiff indicate rain in the amount of .01".

(1986). In applying this standard, courts must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001)). Once the moving party meets its initial burden by demonstrating that no material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). Rather, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown, 257 F.3d at 251 (citation omitted). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

### III.   DISCUSSION

####   a.   Spoliation of Evidence

Defendant first moves for summary judgment on the ground that Plaintiff's suit is barred because of the spoliation of evidence. Defendant contends that Plaintiff anticipated litigation immediately after the delamination of the Air-Bloc 31, as evidenced by their quick retention of counsel in June 2006, but failed to preserve samples of the delaminated product for inspection and testing, thereby prejudicing Henry's defense. Plaintiff responds that Henry had ample opportunity to inspect the product, including the fact that its own employee witnessed the delamination on June 1, 2006 and advised that it be removed and reapplied. Plaintiff also contends that it did not retain counsel until late July 2006, after the Air-Bloc 31 had been removed.

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999). "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Fujitsu, Ltd. v. Federal Exp. Corp., 247 F.3d 423, 436 (2d Cir. 2001). "Once a court has concluded that a party was under an obligation to preserve the evidence that it destroyed, it must then consider whether the evidence was intentionally destroyed, and the likely contents of that evidence. The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge." Id.

Here, assuming Plaintiff had a duty to preserve the evidence, and acknowledging that samples of the product may well be relevant to the claims at issue here, the Court finds that the sanction of dismissal is not warranted. This conclusion is supported by the facts that Defendant was well aware that there was a problem with its product; Defendant was involved in discussions as to how to remedy the problem; Defendant's agents visited the site on June 14 and observed the application and condition of the product; by June 20, 2006, Defendant had formed an opinion as to why the delamination occurred; and in its June 20, 2006 letter, Defendant itself recommended that "any delaminated, flaking or peeling Air-Bloc 31 material" be removed (see also Pl.'s Ex. H (recommending that any flaking material be removed). There are no facts suggesting that Plaintiff intentionally attempted to destroy evidence, let alone adverse evidence. See Fujitsu, 247 F.3d at 436; Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 108 (2d Cir. 2001). Accordingly, Defendant's motion to dismiss on the ground of spoliation is denied.

    **b.**    **Economic Loss Rule**

Defendant next seeks summary judgment on the ground that New York law does not allow negligence actions seeking recovery for purely economic loss. Plaintiff responds that the failure of Defendant's product caused damage to the concrete masonry unit to which the Air-Bloc 31 was applied. Plaintiff states that "the Air-Bloc 31 emulsified and the [concrete masonry unit] wall was damaged and rendered useless for one of the purposes for which it was designed, i.e., to waterproof the [building]. . . . [P]laintiff does not seek costs of repair or replacement of the defective product, but instead, the costs associated with the physical damage to other property caused by the delamination of the Air-Bloc 31." Pl.'s Mem. of Law at 9.

As the Second Circuit has explained:

> The economic loss rule was adopted by the New York Court of Appeals in Schiavone Construction Co. v. Elgood Mayo Corp., 56 N.Y.2d 667, 668-69, 451 N.Y.S.2d 720, 436 N.E.2d 1322 (1982), rev'g on dissent below, 81 A.D.2d 221, 227-234, 439 N.Y.S.2d 933 (1981) (Silverman, J., dissenting). . . . The rule developed as a way of enforcing the dictates of privity in product liability law and preventing tort remedies from eliminating the customary limitations involved in cases addressing the sale of goods. . . . The majority of cases enunciating the economic loss rule have arisen in the context of product liability, where the economic losses are essentially contractual in nature, and therefore the risk may be allocated by the parties, as reflected in the purchase price, UCC warranties or insurance. . . . To prevent . . . open-ended liability, courts have applied the economic loss rule to prevent the recovery of damages that are inappropriate because they actually lie in the nature of breach of contract as opposed to tort.

Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 16 (2d Cir. 2000) (internal citations and alterations omitted). The New York Court of Appeals has stated that "[t]ort recovery in strict products liability and negligence against a manufacturer should not be available to a downstream purchaser where the claimed losses flow from damage to the property that is the subject of the contract." Bocre Leasing Corp. v. General Motors Corp., 84 N.Y.2d 685, 694 (1995). "Tort remedies are not available under these circumstances for 'injury to the product itself or consequential losses flowing therefrom.'" Traverlers Cas. and Sur. Co. v. Dormitory Authority - State of New York, 2008 WL 1882714, at *3

(S.D.N.Y. 2008) (quoting Bocre Leasing, 84 N.Y.2d at 693). There is an exception, however, where a defective product causes damage to property other than the defective product itself. Id. Stated otherwise, as the cases cited below demonstrate, to fall within the exception, damage must be caused to property that is not the subject of the contract.

Here, although Plaintiff claims damage to other property, it fails to point to evidence in the record demonstrating that the failure of the Air-Bloc 31 caused damage to any other property, including the concrete masonry unit walls. Assuming, *arguendo*, that the concrete masonry unit (which are the cinder blocks to which the Air-Bloc was applied), insulation, or brick veneer, constitute "other property" and is not property that is the subject of the underlying contract, the fact that any such materials were intentionally removed and replaced to gain access to the failed Air-Bloc 31 does not constitute the type of damage necessary to avoid the economic loss rule. In Admin Realty, LLC v. K&R Const. Corp., 306 A.D.2d 230, 762 N.Y.S.2d 92 (2d Dep't 2003), for example, it was alleged that the defendant "supplied and poured defective concrete which required the removal, re-installation, and repair of the first floor of the building." Id. at 231. The court held that "[i]n the case at bar, the plaintiff merely alleged economic losses with respect to the removal, re-installation and repair of the first floor of the subject building. Accordingly, the economic loss rule barred the plaintiff's [tort] . . . claims. . . ." Id. Similarly, in AKV Auto Transport, Inc. v. Syosset Truck Sales, Inc., 24 A.D.3d 833 (3d Dep't 2005), the defendant installed and/or made repairs to the light bar on the plaintiff's truck which caused a fire to damage the truck. The court held that "[s]ince plaintiff here alleged only economic loss arising out of damage to the product itself - that is, the truck and its component parts - against the retail seller of that product, the rule bars plaintiff's . . . claims. . . ." Id. at 835; see also Bocre Leasing Corp., 84 N.Y.2d at 694 (economic loss rule barred tort claim against manufacturer of

helicopter engine for damage caused to helicopter as a result of a crash); Atlas Air, Inc. v. General Elec. Co., 16 A.D.3d 444 (2d Dept. 2005) (economic loss rule barred tort recovery for damage to plane in suit against manufacturer of airplane engine where the engine failed during flight causing the plane to make an emergency landing, thereby damaging the plane); East River S.S. Corp. v. Transamerica Delaval, 476 U.S. 858, 871 (1986) (damage to a machine caused by failure of one of its component parts does not constitute damage to "other property."); Trump Intern. Hotel & Tower v. Carrier Corp., 524 F. Supp.2d 302, 309-12 (S.D.N.Y. 2007).

Here, as noted, Plaintiff does not identify any physical damage to other property caused by the delamination of the Air-Bloc 31. See also Weiss v. Polymer Plastics Corp., 21 A.D.3d 1095, 1096 (2d Dep't 2005); Travelers Cas. and Sur. Co., 2008 WL 1882714, at *3 n.4. Plaintiff's claims appear to arise out of the "removal of all exterior materials . . . down to the CMU [concrete masonry unit] . . . and reinstallation of the foregoing. . . ." Pl.'s Mem. of Law at 6. See also Def.'s Stmnt. of Mat. Facts at ¶ 7 (Stating that Plaintiff's damages "include expenses incurred in connection with removal of brick veneer walls, removal of the rigid insulation board, removal of the failed Air-Bloc 31, and rebuilding of those portions of the brick veneer walls which had been removed."). The damages at issue in this case arise out of the expectations of the parties to the construction contract and, thus, are not recoverable under tort principles.

Plaintiff argues that this case is different because Defendant negligently provided certain inspection services. The facts demonstrate that, in its February 17, 2006 letter, Defendant noted the requirement for "installer certification" and confirmed that the installer, Cornerstone Waterproofing, was certified to apply the Air-Bloc 31 product. Exhibit Q. Defendant stated that it would provide periodic reviews and site observations "to ensure that the installer is complying with our certification

training and understands both the concepts of an Air Barrier assembly and the techniques to ensure an airtight installation." Id. In its May 16, 2006 letter, Henry made it clear that "HENRY Company provides on site observations of the installation of [its] products, as a service to Installers and specifiers. [Henry] provide[s] guidance based on [its] observation at the time of [its] visit. The role of HENRY Company is nor [sic] one of inspection or over all approval of the installation." Exhibit L. This is consistent with Plaintiff's Exhibit Q, which provides that Defendant agreed to have a representative on site for two visits "to inspect the application and file a report of observations."

    The fact that Defendant provided these inspections does not alter the result. Determining whether a claim falls within contract or tort entails analysis of the basis of the parties' relationship, the nature of the injury, the manner in which the injury occurred, and the resulting harm. See Sommer v. Federal Signal Corp., 79 N.Y.2d 540, 551 (1992). Any duty owed by Defendant arose out of the contract to supply its product. Although Henry agreed to perform certain limited inspections, any such duty was part of the underlying contract and not an independent legal duty. See Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 389-90 (1987).[2] Thus, it was the parties' contract, not policy, that gave rise to any duty of care. Sommer, 79 N.Y.2d at 551; Clark-Fitzpatrick, Inc., 70 N.Y.2d at 390. The nature of the injury, the manner in which it occurred, and the resulting harm, also counsel against permitting tort causes of action. The injury at issue here essentially consists of consequential damages resulting from product failure; that is, costs incurred in removing components to gain access to the Air-Bloc 31, removing the Air-Bloc 31, installing a new barrier, and replacing the removed components. These are quintessential breach of contract damages. Sommer, 79 N.Y.2d at 552; see

---

[2] Unlike Hyrdo Investors, Inc., 227 F.3d 8, and the cases cited therein, this case does not involve an instance of professional malpractice (such as a claim against a lawyer or engineer) that may give rise to an independent legal duty.

also Belleveue S. Assocs. v. HRH Constr. Corp., 78 N.Y.2d 282, 293 (1991).[3] The damages at issue here are not typical of tort claims and were not the result of an abrupt, cataclysmic occurrence. See Belleveue S. Assocs., 78 N.Y.2d at 293-95.  Accordingly, for the foregoing reasons, Plaintiff's products liability and negligence claims are barred by the economic loss doctrine.

IV.     CONCLUSION

Accordingly, it is hereby

**ORDERED**, that Defendant's Motion for summary judgment (Dkt. No. 29) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's Amended Complaint (Dkt. No. 39) is **DISMISSED in its entirety**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:  December 11, 2008
        Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

---

[3] In Sommer, 79 N.Y.2d at 552, the Court of Appeals characterized Bellevue was follows:

In Bellevue, we rejected plaintiff's attempt to ground in tort a claim that defendants supplied defective floor tiles, noting that the injury (delamination of tiles) was not personal injury or property damage; there was no abrupt, cataclysmic occurrence; and the harm was simply replacement cost of the product. Thus, where plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory